JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation

## DEFENDANTS

BAY AREA DIABLO PETROLEUM COMPANY dba GOLDEN GATE PETROLEUM COMPANY, DOES 1 - 10, INCLUSIVE

**(b)** County of Residence of First Listed Plaintiff  SONOMA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    CONTRA COSTA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jack Silver, Esquire         Tel. 707-528-8175
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

|  |  |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☒ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | **IMMIGRATION** | 26 USC 7609 | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | Transferred from ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | Appeal to District ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Resource Conservation and Recovery Act - 42 U.S.C. Section 6901 et seq

Brief description of cause:
Injunctive Relief, Civil Penalties, Restitution and Remediation for violations of the RCRA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ Injunctive Relief

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND          ☐ SAN JOSE

DATE
03-21-08

SIGNATURE OF ATTORNEY OF RECORD

1  Jack Silver, Esq. SBN #160575
   Law Office of Jack Silver
2  Post Office Box 5469
   Santa Rosa, CA 95402-5469
3  Tel.    (707) 528-8175
   Fax.    (707) 528-8675
4  lhm28843@sbcglobal.net

5  Attorneys for Plaintiff
   NORTHERN CALIFORNIA RIVER WATCH
6

7
                        UNITED STATES DISTRICT COURT
8
                      NORTHERN DISTRICT OF CALIFORNIA        **BZ**
9
                                         **CV    08           1613**
10
   NORTHERN CALIFORNIA RIVER                 CASE NO.:
   WATCH, a non-profit corporation,
                                             COMPLAINT FOR INJUNCTIVE RELIEF,
12            Plaintiff,                      CIVIL PENALTIES, RESTITUTION AND
          v.                                 REMEDIATION
13                                           [Environmental - Resource Conservation and
   BAY AREA DIABLO PETROLEUM                 Recovery Act, 42 U.S.C. § 6901 et seq.]
14 COMPANY dba GOLDEN GATE
   PETROLEUM COMPANY, and DOES
15 1 - 10, Inclusive,

16            Defendants
                                     /
17

18

19       NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter, "RIVER

20 WATCH") by and through its attorneys, and for its complaint against defendants, BAY AREA DIABLO

21 PETROLEUM COMPANY dba GOLDEN GATE PETROLEUM COMPANY, and DOES 1-10,

22 inclusive (hereafter, "BAY AREA DIABLO"), states as follows:

23                              **I. INTRODUCTION**

24 1.       This is a civil suit brought against BAY AREA DIABLO, and as yet unidentified DOES under

25 the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. §

26 6901 et seq. (hereafter, "RCRA"); and under California law governing the Underground Storage of

27 Hazardous Substances: California Heath & Safety Code, § 25280 et seq.

28

   COMPLAINT FOR INJUNCTIVE RELIEF                                              1

1  This complaint seeks relief for BAY AREA DIABLO's discharge of pollution from its former
2  fuel dispensing facilities and its properties located at:

3      a.     3575 Pacheco Boulevard, Martinez, California, and,

4      b.     The Brentwood Cardlock Facility at 8285 Brentwood Boulevard, Brentwood, California,
5  (hereafter collectively, "Facilities") into the waters of the State of California and the United States in
6  violation of the above-enumerated statutes and laws.

7  2.     By this Complaint RIVER WATCH seeks:

8      a.     To enjoin BAY AREA DIABLO from discharging pollutants from each of the Facilities
9  into the ground and surface waters surrounding and downstream of the Facilities;

10      b.     A court order directing BAY AREA DIABLO to comply with the substantive and
11  procedural requirements of the above enumerated statutes and laws;

12      c.     A court order directing BAY AREA DIABLO to pay civil penalties or establish
13  remediation projects in lieu of penalties for its violations of the above enumerated statutes and laws; and,

14      d.     A court order directing BAY AREA DIABLO to reimburse RIVER WATCH for its
15  reasonable costs of suit, including attorney's fees, as allowed under § 7002(e) of the RCRA, 42 U.S.C.
16  § 6972(e).

17  **II. JURISDICTION**

18  3.     This Court has subject matter jurisdiction over all Federal causes of action in this Complaint
19  pursuant to RCRA § 7002(a)&(b), 42 U.S.C. § 6972 (a)&(b) and 28 U.S.C. § 1221 (an action for
20  declaratory and injunctive relief arising under the Constitution and laws of the United States). This Court
21  has supplemental jurisdiction over all State-based causes of action in this Complaint pursuant to 28
22  U.S.C. § 1367, as those claims form part of the same case or controversy as the Federal causes of action.
23  4.     On or about November 1, 2007, RIVER WATCH provided notice of BAY AREA DIABLO's
24  violations of the RCRA, and of its intent to file suit against BAY AREA DIABLO to the Administrator
25  of the United States Environmental Protection Agency (hereafter, "EPA"), the Administrator of the
26  Environmental Protection Agency - Region IX, the Executive Director of the State Water Resources
27  Control Board, the Executive Director of the California Integrated Waste Management Board, and to
28  BAY AREA DIABLO, as required by the RCRA (hereafter, "RCRA Notice letter"). A true and correct

COMPLAINT FOR INJUNCTIVE RELIEF     2

1  copy of the RCRA Notice letter is attached hereto as Exhibit A and fully incorporated into this
2  Complaint.

3  5.    Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from,
4  own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit from the
5  affected watershed area and associated natural resources into which the BAY AREA DIABLO Facilities
6  discharge, or by which BAY AREA DIABLO's operations adversely affect those members' interests,
7  in violation of the above-enumerated laws or statutes. The health, economic, recreational, aesthetic and
8  environmental interests of RIVER WATCH's members may be, have been, are being, and will continue
9  to be adversely affected by BAY AREA DIABLO's unlawful violations of the above-enumerated laws
10  or statutes. RIVER WATCH contends there exists an injury in fact to its members, causation of that
11  injury by the conduct of BAY AREA DIABLO complained of herein, and a likelihood that the requested
12  relief will specifically redress that injury. RIVER WATCH, through its members, has standing to bring
13  this action. A copy of this Complaint shall be provided to the United States Attorney General, the
14  Administrator of the United States EPA, and the Attorney General of California.

15  ## III. INTRADISTRICT ASSIGNMENT

16  6.    The basis for assignment of this case to the Northern District of California, pursuant to RCRA
17  § 7002(a)&(b), 42 U.S.C. § 6972 (a)&(b), is that BAY AREA DIABLO's Facilities and operations are
18  located in this District.

19  ## IV. PARTIES

20  7.    RIVER WATCH is a 501(c)(3) non-profit public benefit corporation duly organized under the
21  laws of the State of California. Its headquarters are located in Sebastopol, California. RIVER WATCH
22  is dedicated to protecting, enhancing and helping to restore the waters of Northern California, including
23  its drinking water sources, ground water, rivers, creeks and tributaries. Many of RIVER WATCH's
24  members live in areas affected by BAY AREA DIABLO's pollution as alleged in this Complaint. Said
25  members have an interest in said areas which interest is or may be adversely affected by BAY AREA
26  DIABLO's violations as set forth in this Complaint. Said members use the affected watershed for
27  domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking,
28  photography, nature walks and the like. Furthermore, the relief sought in this Complaint will specifically

COMPLAINT FOR INJUNCTIVE RELIEF                                                                 3

1  redress the injuries in fact, and the likelihood of future injuries and interference with the interests of
2  RIVER WATCH's members.

3  8.     RIVER WATCH is informed and believes and on said information and belief alleges that
4  defendant BAY AREA DIABLO is a company registered in the State of California, doing business in
5  Martinez, California under the name of BAY AREA DIABLO PETROLEUM COMPANY, and doing
6  business as GOLDEN GATE PETROLEUM COMPANY.

7  9.     Defendants DOES 1-10, inclusive, respectively, are persons, partnerships, corporations and
8  entities, who are, or were, responsible for, or in some way contributed to, the violations which are the
9  subject of this Complaint, or are, or were, responsible for the maintenance, supervision, management,
10  operations, or insurance coverage of BAY AREA DIABLO's Facilities. The names, identities,
11  capacities, and functions of DOES 1-10, inclusive, are presently unknown to RIVER WATCH. RIVER
12  WATCH shall seek leave of court to amend this Complaint to insert the true names of said DOES when
13  the same have been ascertained.

14  ## V. STATEMENT OF FACTS

15  10.    BAY AREA DIABLO has owned, operated and/or leased the Facilities at least since the 1980's
16  according to information available to RIVER WATCH.

17  11.    BAY AREA DIABLO in the past has stored and/or currently stores large quantities of petroleum
18  products in underground storage tanks (hereafter, "USTs") at the Facilities. In early 1992 and again in
19  2004 (Martinez site), and in 1996 (Brentwood site) petroleum contamination was detected in soil and
20  groundwater beneath the Facilities. Subsequent investigation indicated that the contamination was and
21  is attributable to leakage from USTs and piping systems, surface spills and/or poor maintenance or
22  operational practices.

23  12.    Regulatory Agencies have ordered BAY AREA DIABLO to investigate and remediate petroleum
24  contamination at the Facilities following discovery of petroleum releases at these sites. BAY AREA
25  DIABLO has conducted some investigative and remedial work at the Facilities in response to Agency
26  directives; however, significant levels of petroleum contamination remain in soil and groundwater
27  beneath and adjacent to the Facilities.

28

COMPLAINT FOR INJUNCTIVE RELIEF                                                                    4

1   13.    Regulatory Agencies have designated surface and ground waters in this area of California as
2   capable of supporting domestic supply, and have established maximum contaminant levels for petroleum
3   constituents in surface and ground waters.

4   14.    Benzene and toluene are known carcinogens and/or reproductive toxins, and have been listed
5   chemicals under Proposition 65 since at least 1991. Surface and groundwater at the Facilities are
6   potential sources of drinking water under applicable Regional Water Quality Control Board, Water
7   Quality Control Plans( aka Basin Plans). In the course of doing business, BAY AREA DIABLO has
8   discharged benzene and toluene to surface and groundwater at the Facilities on a daily basis since at least
9   approximately 1992 (Martinez site) and 1996 (Brentwood site).

10  15.    BAY AREA DIABLO has used and/or stored petroleum at the Facilities in a manner which has
11  allowed significant quantities of hazardous petroleum constituents, including MTBE, to be discharged
12  to soil and groundwater beneath the Facilities and beneath adjacent properties.

13  16.    BAY AREA DIABLO has conducted some site investigations and remedial work at the
14  Facilities. Based upon current levels of contamination, however, BAY AREA DIABLO has been
15  unsuccessful in abating the contamination. To date, the levels of TPHg, benzene, toluene, ethylbenzene,
16  and xylenes remain high above the allowable Maximum Contaminant Levels and/or Water Quality
17  Objectives for said constituents, creating an imminent and substantial endangerment to public health and
18  the environment. Significant quantities of MTBE are also being detected in soil and groundwater beneath
19  the Facilities and adjacent properties, creating an imminent and substantial endangerment to public
20  health and the environment.

21  17.    The discharges by BAY AREA DIABLO as alleged in the RCRA Notice Letter (Exhibit A) are
22  both knowing and intentional. BAY AREA DIABLO has used, stored and sold petroleum products at
23  the Facilities, which are known to contain benzene, toluene, TPHg, ethlybenzene, xylenes, and/or
24  MTBE, and intends or has intended that such products be sold to and used by the public. BAY AREA
25  DIABLO has known of the contamination at the Facilities since at least 1992, and is also aware that
26  failing to remediate the pollution allows the contamination to migrate through soil and groundwater at
27  and adjacent to the Facilities, and to continually contaminate and re-contaminate actual and potential
28  sources of drinking water.

COMPLAINT FOR INJUNCTIVE RELIEF                                                          5

1  18.    Violations of this and other statutes as alleged in this Complaint are a major cause of the

2  continuing decline in water quality, and a continuing threat to existing and future drinking water supplies

3  in Northern California. With every discharge, groundwater supplies are contaminated. These discharges

4  can and must be controlled in order for the groundwater supply to be returned as a safe source of

5  drinking water.

6  ### VI. FIRST CLAIM FOR RELIEF

7  ### Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C. § 6972(a)(1)(A

8  19.    RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 18 and

9  Exhibit A as though fully set forth herein. RIVER WATCH is informed and believes, and based on such

10  information and belief alleges:

11  20.    RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), provides that any person may commence a

12  civil action against any person or governmental entity alleged to be in violation of any permit, standard,

13  regulation, condition, requirement, prohibition, or order which has become effective pursuant to the

14  RCRA. Civil penalties may be assessed against any person or entity in violation of such permits, etc.

15  pursuant to the RCRA under the provisions of RCRA, 42 U.S.C. §§ 6928 (a) and (g).

16  21.    BAY AREA DIABLO owns and operates the Facilities at which it stores or has stored, and

17  transfers or has transferred, gasoline, diesel, fuel oil and mixed oils to or from USTs. BAY AREA

18  DIABLO's USTs have been and are regulated by the appropriate Regional Water Quality Control Board

19  and/or the Contra Costa County Department of Health.

20  22.    The Regional Water Quality Control Board and/or the Contra Costa County Department of

21  Health have imposed remediation and monitoring requirements to ensure compliance with the RCRA

22  UST program.

23  23.    RIVER WATCH is informed and believes, and thereon alleges, that BAY AREA DIABLO has

24  failed to comply with the statutory and regulatory leak prevention, leak detection, monitoring, and

25  remediation requirements imposed under the RCRA and described in the RCRA Notice Letter attached

26  as Exhibit A.

27  24.    Continuing failure by BAY AREA DIABLO to effectively remediate the on-going contamination

28  at its Facilities will irreparably harm RIVER WATCH and its members, for which harm RIVER

COMPLAINT FOR INJUNCTIVE RELIEF                                                          6

1 | WATCH and its members have no plain, speedy or adequate remedy at law.

2 | Wherefore, RIVER WATCH prays judgment against BAY AREA DIABLO as set forth hereafter.

3 | **VII. SECOND CLAIM FOR RELIEF**

4 | **Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C. § 6972(a)(1)(B)**

5 | 25. RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 24 and
6 | Exhibit A as though fully set forth herein. RIVER WATCH is informed and believes, and based on such
7 | information and belief alleges:

8 | 26. RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a
9 | civil action against any person or governmental entity including a past or present generator, transporter,
10 | owner or operator of a treatment, storage or disposal facility who has contributed to the past or present
11 | handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may
12 | present an imminent and substantial endangerment to health or to the environment. Civil penalties may
13 | be assessed against any person or entity in violation of this section, under the provisions of the RCRA,
14 | 42 U.S.C. §§ 6928 (a) and (g). The RCRA UST regulatory program is adopted and implemented in
15 | California under the provisions governing the Underground Storage of Hazardous Substances (California
16 | Health & Safety Code § 25280 et seq.).

17 | 27. BAY AREA DIABLO owns and operates the Facilities at which it stores or has stored, and
18 | transfers or has transferred, gasoline, diesel, fuel oil and mixed oils.

19 | 28. The Facilities either have USTs which are leaking, or in the past have leaked petroleum
20 | chemicals including benzene, toluene, TPHg, ethylbenzene, xylenes, and MTBE into groundwater; or
21 | petroleum products have been washed off the Facilities into nearby surface waters.

22 | 29. Petroleum products are known to be hazardous to the environment, and if released into the
23 | environment in sufficient quantity pose an imminent and substantial risk to public health and to the
24 | environment.

25 | 30. Constituent chemicals within these petroleum products such as benzene and toluene are known
26 | carcinogens and/or reproductive toxins, and if released into the environment in sufficient quantity pose
27 | an imminent and substantial risk to public health and to the environment in general.

28 |

COMPLAINT FOR INJUNCTIVE RELIEF 7

1  31.    For purposes of the RCRA, petroleum products and their constituents: TPHg, benzene, toluene,
2  ethylbenzene, xylenes, and MTBE, are both "solid wastes" and "hazardous wastes" within the meaning
3  of the statute.

4  32.    RIVER WATCH is informed and believes, and thereon alleges, that amounts of petroleum
5  products and their constituents, TPHg, benzene, toluene, ethylbenzene, xylenes, and/or MTBE, released
6  by BAY AREA DIABLO at the Facilities are in sufficient quantity to pose an imminent and substantial
7  risk to both the environment and to human health.

8  33.    Continuing acts or failure to act by BAY AREA DIABLO to address these violations will
9  irreparably harm RIVER WATCH and its members, for which harm they have no plain, speedy or
10  adequate remedy at law.

11    Wherefore, RIVER WATCH prays judgment against BAY AREA DIABLO as set forth hereafter.

12                            **VIII. RELIEF REQUESTED**

13    Plaintiff, NORTHERN CALIFORNIA RIVER WATCH, respectfully requests this Court grant
14  the following relief:

15  34.    Declare BAY AREA DIABLO to have violated and to be in violation of the RCRA for
16  discharging petroleum products and constituents which are known carcinogens and/or reproductive
17  toxins in sufficient quantities to pose an imminent and substantial risk to health and to the environment;
18  35.    Enjoin BAY AREA DIABLO from discharging petroleum products and petroleum constituents
19  from its Facilities, which petroleum products and constituents pose an imminent and substantial risk to
20  health and the environment;

21  36.    Order BAY AREA DIABLO to comply with the substantive and procedural requirements of the
22  RCRA;

23  37.    Order BAY AREA DIABLO to pay civil penalties, pursuant to provisions of the RCRA,
24  including 42 U.S.C. §§ 6928 (a) and (g), and/or to pay for remediation projects to redress harm caused
25  by BAY AREA DIABLO's violations of the RCRA. Each of the above-described violations of the
26  RCRA subjects the violator to a civil penalties on a per day per violation basis. Civil penalties may be
27  assessed for violations occurring within five (5) years prior to the initiation of a citizen enforcement
28  action;

COMPLAINT FOR INJUNCTIVE RELIEF                                          8

1  38.    Enter a judgment that BAY AREA DIABLO is required to pay civil penalties and exemplary
2  damages according to proof;

3  39.    Enter such preliminary injunctions, permanent injunctions or other orders pursuant to the RCRA
4  requiring BAY AREA DIABLO to enjoin and abate the nuisance resulting from the discharge and
5  release of petroleum products and constituents at the Facilities, and to enjoin the migration of petroleum
6  products and constituents into soil and groundwater;

7  40.    Impose injunctive relief requiring BAY AREA DIABLO to immediately investigate, access and
8  categorize the extent of pollution and implement the "best available technology" to remediate pollution
9  at the Facilities;

10  41.    Impose injunctive relief requiring BAY AREA DIABLO to immediately commence complete
11  remediation of the contamination at and adjacent to the Facilities once the contaminant plume(s) has
12  been adequately characterized.;

13  42.    Award costs (including reasonable attorney, expert, witness, and consultant fees) to RIVER
14  WATCH as authorized by the RCRA; and,

15  43.    Award such other relief as this Court may deem appropriate.

16
17  DATED: March 21, 2008                LAW OFFICE OF JACK SILVER
18
19
20  JACK SILVER
     Attorney for Plaintiff
     NORTHERN CALIFORNIA RIVER WATCH
21
22
23
24
25
26
27
28

COMPLAINT FOR INJUNCTIVE RELIEF                              9

**EXHIBIT  A**

# Law Office of Jack Silver

P.O. Box 5469        Santa Rosa, California 95402
Phone 707-528-8175   Fax 707-528-8675
lhm28843@sbcglobal.net



*Via Registered Mail - Return Receipt Requested*

November 1, 2007

Dennis O'Keefe, President
and Registered Agent for Service
Bay Area /Diablo Petroleum Co. and
Golden Gate Petroleum Co.
501 Shell Avenue
Martinez, California 94553

## Re:    Notice of Violations and Intent to File Suit under the Resource Conservation and Recovery Act

Dear Mr. O'Keefe:

On behalf of Northern California River Watch (River Watch), I am providing statutory notification to you and to Bay Area Diablo Petroleum Company, dba Golden Gate Petroleum Company, (hereafter, "Bay Area Diablo") of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq.) in conjunction with Bay Area Diablo's continuing remediation operations at various Northern California gasoline service station sites.

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the U.S. Environmental Protection Agency and the State in which the violation is alleged to have occurred (42 U.S.C. § 6972(b)(1)(A)). RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment (42 U.S.C. § 6972(b)(2)(A)).

River Watch hereby notifies Bay Area Diablo that at the expiration of the appropriate notice periods under RCRA, River Watch intends to commence a civil action against Bay Area Diablo on the following grounds:

**Notice of Violations - RCRA - Page 1 of 9**

1.  Bay Area Diablo's use and storage of petroleum products at its facilities and sites as identified in this **Notice** has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding storage of petroleum in underground storage tanks [42 U.S.C. §6972(a)(1)(A)];

2.  Bay Area Diablo's operations at its facilities and sites as identified in this **Notice** has caused petroleum contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

## NOTICE REQUIREMENTS

RCRA requires that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1.  *The specific standard, limitation, or order alleged to have been violated.*

Provisions of RCRA govern the use and operation of underground storage tanks ('USTs") used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.). The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Petroleum and petroleum constituents have been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of petroleum and petroleum constituents and product.

2.  *The activity alleged to constitute a violation.*

River Watch has noticed Bay Area Diablo of the fact it has caused or permitted, causes or permits, or threatens to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into ground waters and/or surface waters of the State and now creates, or threatens to create, a condition of pollution or nuisance; and, that it has used and stored, and continues to use and store, petroleum products at the sites identified in this **Notice** in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and groundwater beneath said sites and adjacent properties. River Watch has set forth narratives below describing with particularity the activities leading to violations.

3.  *The discharger responsible for the alleged violation.*

The discharger responsible for the alleged violations set forth in this **Notice** is Bay Area Diablo Petroleum, Inc., dba Golden Gate Petroleum Company, referred to as "Bay Area Diablo" throughout this **Notice.**

4. *The location of the alleged violation.*

The location or locations of the various violations are identified in the narrative section of this **Notice** and in records either created or maintained by or for Bay Area Diablo which relate to its activities.

5. *The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.*

River Watch contends the Bay Area Diablo facilities and sites described in this **Notice** have been in continuous violation of RCRA since 1996. This **Notice** covers the period from when Bay Area Diablo knew or should have known it was violating RCRA. Therefore, the range of dates covered by this **Notice** is January 30, 1996 to November 1, 2007. River Watch will from time to time update and supplement its **Notice** to include all violations which occur after the date of this **Notice.**

6. *The full name, address, and telephone number of the person giving notice.*

The entity giving this **Notice** is Northern California River Watch, a non-profit corporation dedicated to the protection and enhancement of waters of the State of California, including all rivers, creeks, streams and ground water in Northern California. Northern California River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue Ste. 140 Sebastopol, CA 95472. Phone / Fax: (707) 824-4372.

The violations of Bay Area Diablo as set forth in this **Notice** affect the health and enjoyment of members of River Watch who reside and recreate in the affected watershed areas. The members of River Watch use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by these violations of RCRA.

## SITES

### 1.  Bay Area Diablo Petroleum Storage Tank Site
### 3575 Pacheco Boulevard, Martinez, CA

This former storage tank site is located along a portion of Pacheco Boulevard adjacent to the Shell Oil refinery. The site was used as a facility to dispense fuel and lubricants since the mid-1940s. From that time until approximately 1966, the site was owned and operated in this capacity by Shell Oil. In approximately 1969, Shell Oil sold the buildings and improvements on the property to Martinez Petroleum which became Diablo Petroleum in 1979, at the same time leasing the underlying property to Martinez Petroleum. In October of 1987, Golden Gate Petroleum purchased the building and improvements from Diablo Petroleum, and took over the lease from Shell Oil. During the 1970s and 1980s, a number of USTs were installed, and the gravel yard was replaced with asphalt and concrete slabs.

An unauthorized petroleum hydrocarbon release was first reported in October of 1992, and more recently on October 14, 2004 when approximately 2,619 gallons of oil were released into Peyton Slough, adjacent to the facility. This violation of the Clean Water Act, 33 U.S.C. § 1321(b)(3), resulted in a Class II Administrative Penalty which was settled by Consent Agreement in early 2006.

Fifteen of the USTs were removed from the facility in 2004 and in early 2005. These tanks had a combined volume of over 70,000 gallons of fuel products. There were also fuel distribution lines and a waste oil sump on the property. Over-excavation was done at that time, but sampling of remaining soil indicated TPHg levels as high as 1,000,000 ppb, TPHd levels as high as 26,000,000 ppb, benzene as high as 600 ppb, toluene as high as 28,000 ppb, ethylbenzene as high as 8,900 ppb, xylenes as high as 47,000 ppb, lead in the samples found at 202,000 ppb, and MTBE found at 700 ppb levels. Once the tanks were removed, the excavations were backfilled with clean materials and the site was paved over.

In March of 2006, the California Regional Water Quality Control Board ("RWQCB") directed Bay Area Diablo to submit a workplan to characterize the extent of hydrocarbon pollution and to monitor concentration trends and groundwater flow in and around the site. The RWQCB also directed that a sensitive receptor survey of the area within a 2,000 radius of the property be conducted. The workplan and sensitive receptor survey were required to be filed with the RWQCB by May 10, 2006.

By May 10, 2006, the workplan had not been filed. However, by May 15, 2006, the geotechnical consultant for Bay Area diablo indicated that a sensitive receptor survey would be done, along with the installation of seven monitoring wells. There is no indication in the Contra Costa County Health Services files that any of this work has been accomplished to date.

At the present time, Bay Area Diablo's consulting engineering company does not appear to be investigating and monitoring contaminant levels at the site, and no active remediation has been conducted. Apparently no sensitive receptor surveys or aquifer impact assessments have been completed. There has been no effort to demonstrate the effectiveness of any natural attenuation/bioremediation strategy, and plume delineation still needs to be commenced, with estimates of how much petroleum hydrocarbons have been removed to date, and how much remains in the soil and groundwater in and around the site.

Accordingly, this is a site for which River Watch must rely upon federal statutory provisions which authorize citizen suits where regulatory agency processes have not resulted in viable and timely solutions to the contaminant problems in our Northern California communities.

## 2.    Brentwood Cardlock Facility
### 8285 Brentwood Boulevard, CA

The Brentwood Cardlock is located between Brentwood and Walnut Boulevards. The southern portion of the site provides a retail outlet for gasoline and petroleum products, while the northern portion is used as a bulk distribution facility. The site currently consists of two 20,000 gallon and two 12,000 gallon USTs for its retail marketing side.

The first unauthorized petroleum hydrocarbon release was reported in 1996. In December of 1998 and January of 1999, nine USTs were removed along with their dispenser islands and supply lines. Site investigations at the time determined the presence of floating product (NAPL) beneath the site. Monitoring was initiated in 2000 with the installation of both shallow and deep zone monitoring wells. The underlying aquifer was apparently tested for the impact of contaminants in 2004.

Extraction wells were installed in 2005 and 2006. Groundwater flows to the east towards Walnut Blvd. The Brentwood water tower and well is situated at a distance of less than 300 feet in that direction. Bay Area Diablo's engineering consultant has prepared diagrams of the site which depict the underground plume as reaching within approximately 100 feet of the Brentwood supply well.

As of the most recent published data, TPHg levels are as high as 38,000 ug/l, and above California Maximum Contaminant Levels ("MCLs") in nine wells; TPHd levels are as high as 29,000 ug/l, and are above California MCLs in twelve wells; benzene levels are as high as 9,300 ug/l, and exceed State MCLs in eight wells and MTBE levels are as high as 1,200,000 ug/l (EW-4), and exceed State MCLs in ten wells. Monitoring well MW-3 continues to produce a thickness level of free product. Despite remediation efforts, the presence of subsurface free product has not been eliminated since the first unauthorized release in 1996.

As noted above, remediation work is being done; however, engineering reports do not reflect the extent to which a sensitive receptor survey has been conducted. Also, consultant's records reviewed by River Watch do not include information as to whether actual testing has occurred to rule out impacts to sensitive receptors in the vicinity of the site. Downgradient wells within 1,000 feet of the plume should be tested, including the Brentwood well. The records also do not reflect whether any preferential pathway study has been conducted. River Watch takes the position that subsurface conduits and sewer laterals must be tested to determine whether plume migration might be accelerated via artificial channels or via gravel stringers within the soil geology.

The records reviewed also do not reflect that a thorough aquifer impact assessment has been completed. Efforts to determine the residual contaminant mass should be made so as to provide a basis for estimating the length of time necessary for full remediation to be accomplished.

## REGULATORY STANDARDS

Water Quality Objectives ("WQO") exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist, and the most stringent WQOs for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered that evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has adopted a Water Quality Control Plan or "Basin Plan" which designates all surface and groundwater within the North Coast and San Francisco Bay regions as capable of supporting domestic water supply. The RWQCB has adopted MCLs and/or WQOs for petroleum constituents in surface and groundwater within the region of 50 ug/l for TPHg, 1 ug/l for benzene, 150 ug/l for toluene and 13 ug/l for MTBE.

Petroleum and petroleum constituents have been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of petroleum and petroleum constituents and products.

## VIOLATIONS

### 1.    Violations of Permits, Standards and Regulations
### [42 U.S.C. § 6972(a)(1)(A)]

Between approximately January of 1996 and the date of this **Notice**, Bay Area Diablo has caused or permitted, causes or permits, or threatens to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into ground waters and/or surface waters of the State and now creates, or threatens to create, a condition of pollution or nuisance. The discharge and threatened discharge of such petroleum waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Provisions of RCRA govern the use and operation of USTs used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.). The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. § 6928(a) and § 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged – as River Watch has alleged in this **Notice** with respect to the Bay Area Diablo sites. Accordingly, under these provisions persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

Between approximately January of 1996 and the November 1, 2007, Bay Area Diablo's use and storage of petroleum at the sites listed above has allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and groundwater in violation of the provisions of RCRA and of the California UST regulatory programs including, but not limited to, provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.

Specifically, with respect to these sites, Bay Area Diablo is or may be responsible for the following statutory violations:

1.   Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b).

2.   Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292.

3.   Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1).

4.   Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

## 2.   Imminent and Substantial Endangerment
### [42 U.S.C. § 6972(a)(1)(B)]

Between approximately January of 1996 and November 1, 2007, Bay Area Diablo used and stored, and continues to use and store, petroleum products at the sites identified in this **Notice** in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and groundwater beneath the sites and beneath adjacent properties. The contaminant levels of TPHg, benzene, toluene, and MTBE in groundwater at these sites are significantly greater than the allowable MCLs and/or WQOs for said constituents. Benzene, MTBE, TAME, and TBA are known or suspected carcinogens. Toluene is a reproductive toxin. Ethylbenzene, methanol and xylene are live toxins. All are known to harm both plants and animals. In their concentration at these sites, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this **Notice** are knowing and intentional in that Bay Area Diablo in the past has used, stored and sold petroleum products at the sites identified herein which are known to contain hazardous substances; and, in that Bay Area Diablo intended that such products be sold to and used by the public. Bay Area Diablo has known of the contamination at these sites since at least 1996, and has also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the sites, and to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this **Notice** is intended to cover all Bay Area Diablo's violations of RCRA evidenced by information which becomes available to River Watch after the date of this **Notice.**

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter.    All communications with respect to this **Notice** should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
Fax (707) 528-8675

## CONCLUSION

River Watch believes this **Notice** sufficiently states grounds for filing suit under the statutory and regulatory provisions of RCRA as to the sites referenced above.  At the close of the notice periods or shortly thereafter, River Watch intends to file a suit against Bay Area Diablo under the provisions of RCRA for each of the violations alleged herein, and with respect to the existing conditions at said sites.

During the 90 day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this **Notice.**  If Bay Area Diablo wishes to pursue such discussions in the absence of litigation, it is encouraged to initiate such discussions immediately so that the parties might be on track to resolving the issues of River Watch before the end of the notice period.    River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jack Silver

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
401 M Street, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne St.
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

Operator, Brentwood Cardlock Facility
8285 Brentwood Boulevard
Brentwood, CA 94513